UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LUKE E. IMPERATORE,

                                                    05 CV 4966 (RPP)
                                Plaintiff,


                                                    **OPINION & ORDER**

PUTNAM LOVELL NBF SECURITIES INC.,

                                Defendant.
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J**.

        Plaintiff Luke E. Imperatore ("Plaintiff") filed a complaint on May 24, 2005

alleging breach of contract, detrimental reliance, quantum meruit, fraud,

misrepresentation, tortuous interference, breach of a covenant of good faith and

reimbursement of expenses.  Defendant Putnam Lovell NBF Securities Inc.

("Defendant") filed a motion on July 6, 2005, moving this Court to (1) compel arbitration

of all claims, pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1

et seq., or (2) dismiss pursuant to Fed. R.Civ. P. Rule 12(b)(6) all claims by Plaintiff

against Defendant.

**BACKGROUND**

        Plaintiff filed a complaint on May 26, 2005, alleging nine Causes of Action, all

resulting from Defendant's termination of and refusal to pay Plaintiff a percentage of its

revenues.  (Pl. Comp.)  Causes of Actions One through Three are contract-based and

allege breach of contract, detrimental reliance, and quantum meruit.  (Id. at 4-6).  Causes

of Action Four through Seven allege the claims of fraud, misrepresentation, tortious

interference, and prospective tortuous interference.  (Id. at 6-9).  Cause of Action Eight

alleges breach of the covenant of good faith and fair dealing, and Cause of Action Nine seeks contractual reimbursement of expenses. (Id. at 9-10).

**Facts**

Plaintiff commenced employment in New York with Defendant on or about February 17, 2004. (Employment Agreement, Imperatore Aff. Ex A at 1). On February 23, 2004, Plaintiff filled out and signed an Employment Application. (Wolfe Aff. Ex. A at 14). The Employment Application contained a provision that required all employment disputes to be submitted to arbitration.[1] (Id. at 13). A subsequent letter agreement dated February 27, 2004 ("Employment Agreement") contained the terms and conditions of Plaintiff's employment with Defendant, but did not contain an agreement for arbitration. (Imperatore Aff. Ex A). The Employment Agreement laid out Plaintiff's compensation package including, inter alia, a revenue sharing component (Id. at 2) and a compensation package if Plaintiff was terminated without cause (Id. at 3-4). The Employment Agreement also contained a "merger clause" which stated:

> Entire Agreement. This Letter Agreement supersedes any and all existing agreements, oral or written, between you and  Putnam Lovell NBF relating to the terms and conditions of your employment.

(Id. at 7, § 12(b)).

On March 8, 2004, Plaintiff signed a Form U-4 Uniform Application for Securities Industry Registration or Transfer ("Form U-4") which contained an agreement to arbitrate providing, in relevant part:

---

[1] The language of the arbitration clause reads as follows: "I hereby agree to submit to arbitration all disputes and claims arising out of the submission of this application as applicable by law.  I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to arbitration as applicable by law. . . ."  (Wolfe Aff. Ex. A at 13).

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my <u>firm</u>, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SRO's indicated in Section 4 (SRO Registration) as may be amended from time and that any arbitration award rendered against me may be entered as a judgment in any court of competent <u>jurisdiction</u>. . . .

(Form U-4 § 15A(5), Wolfe Aff., Ex. B) (Emphasis added). Plaintiff checked the Form U-4 for "Full Registration / General Securities Representative." (<u>Id</u>. at § 4).

After working for one year, Plaintiff filed the complaint on May 26, 2005, based on his receipt of a termination letter dated March 23, 2005 (Pl. Compl. at ¶ 11), alleging breach of the Employment Agreement and various torts by Defendant's termination of his employment without cause and refusal to pay revenue sharing compensation. Defendant filed this motion on July 6, 2005 to compel arbitration and dismiss or stay Plaintiff's action.

**DISCUSSION**

*Motion to Compel Arbitration*

Defendant argues that Plaintiff is obligated to arbitrate the claims in his complaint pursuant to his Form U-4 Agreement and Employment Application. (Def. Mem. at 6). The Federal Arbitration Act provides for a stay of any suit brought in the courts of the United States "upon any issue referable to arbitration." 9 U.S.C. § 3. Section 3 reads as follows:

> Stay of proceedings where issue therein referable to arbitration
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been

had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Id.  The issuance of a stay is mandatory if a suit has been commenced upon an arbitrable issue. Campeau Corp. v. May Dep't Stores Co., 723 F. Supp. 224, 226-27 (S.D.N.Y. 1989). The presumption in favor of arbitrability is greater when the arbitration clause is broad. McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (distinguishing "between 'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes ) (citing AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, (1986)). "Arbitration must not be denied unless a court is positive that the clause it is examining does not cover the asserted dispute." Spear, Leeds & Kellogg v. Central Life Assurance Co., 85 F.3d 21, 28 (2d Cir. 1996), cert. denied, 519 U.S. 1040 (1996).

Analysis of a request to stay proceedings pending compulsory arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., requires that a court determine four factors: 1) whether the parties agreed to arbitrate; 2) the scope of that agreement; 3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and 4) if some, but not all, of the claims are arbitrable, whether to stay the remainder of the proceedings pending arbitration.  Creative Sec. Corp. v. Bear Stearns & Co., 671 F.Supp. 961, 965 (S.D.N.Y. 1987) aff'd mem., 847 F.2d 834 (2d Cir. 1988).

Plaintiff's Complaint does not assert any federal statutory claims[2] and, as will be discussed below, all of Plaintiff's claims are related to the employment agreement and

---

[2]  Both Plaintiff's Affidavit and Brief in Opposition mention that Plaintiff will be or is in the process of seeking a "Right to Sue Letter" for Age Discrimination.  (Imperatore Aff. ¶ 9;  Pl. Brief in Opp. at 1).  This claim is made in an attempt to convince this court to stay the suit and not dismiss it outright as age

arbitrable.  The issues in the present case are therefore whether or not there is a valid

agreement between the parties to arbitrate and if so what is the scope of that agreement.

1. Agreement to Arbitrate

In the motion to compel arbitration, Defendant claimed that Plaintiff is obligated to

arbitrate his claims pursuant to both the Employment Application and the Form U-4.

(Def. Mem. at 2-3).  As Plaintiff correctly argues in his Memo in Opposition, however,

the Employment Application, dated February 23, 2004 was superseded by the

Employment Agreement, dated February 27, 2004, which contained the merger clause.

(Pl. Brief in Opp. at 12-13; Imperatore Aff. Ex. A; Wolfe Aff. Ex. A).  However, on

March 8, 2004, Plaintiff signed a Form U-4, which also contains an agreement to

arbitrate "any dispute … that may arise between me and my firm" and is not superseded

by the earlier Employment Agreement. (Wolfe Aff. Ex. B § 15A(5)).

Courts apply generally accepted principles of contract law in order to determine

whether a party has agreed and consented to arbitration. Genesco, Inc. v. Kakiuchi & Co.,

815 F.2d 840, 845 (2d Cir. 1987).  "Under such principles, in the absence of fraud or

other wrongful act on the part of another contracting party, a party who signs or accepts a

written contract . . . is conclusively presumed to know its contents and to assent to them."

Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (internal

quotations omitted).  See also Arakawa v. Japan Network Group, 56 F.Supp.2d 349, 352

(S.D.N.Y. 1999) (A party will be "bound by the agreement to arbitrate unless [he or] she

can show special circumstances, such as duress or coercion, which would justify non-

enforcement of the contract.")

---

discrimination suits are not per se arbitrable under NASD rules.  However, Plaintiff's future actions are not
before the Court.

Here, Plaintiff signed a Form U-4 agreement which the National Association of Securities Dealers, Inc. ("NASD") requires to be signed before engaging in certain activities. (See Imperatore Form U-4, Wolfe Aff. Ex. B; Deutsche Aktiengesellschaft, 365 F.3d at 146). Plaintiff's Form U-4 provided that Plaintiff "agree[d] to arbitrate any dispute, claim or controversy that may arise between [him] and [his] firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4." (Wolf Aff. Ex. B at § 15A). That section indicates that Plaintiff would be registered with the NASD. (Id. at § 4).

Plaintiff does not dispute the fact that he signed the Form U-4 agreement or that the arbitration clause does not encompass all of the claims in his complaint. Instead, Plaintiff presents several arguments. First, Plaintiff argues that the Special Facts Doctrine should apply. (Pl. Brief in Opp. at 9). Second, Plaintiff argues that the Form U-4 is a contract of adhesion and that Plaintiff did not knowingly agree to arbitrate or waive his right to a jury trial. (Id. at 14). Finally, Plaintiff argues that Defendant misrepresented or acted with fraud. (Id. at 9). However, Plaintiff has not made sufficient showing of the required elements for each of these claims.

a. Special Facts Doctrine

Plaintiff argues that Defendant's Motion to Dismiss should not be granted because his case is reached by the "Special Facts Doctrine," under which a duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." P.T. Bank Cent. Asia v. ABN AMRO Bank N.V., 301 A.D.2d 373, 378 (N.Y. App. Div. 2003); (Pl. Brief in Opp. at 9). In business negotiations, an affirmative duty to disclose may arise where (1) one party has superior knowledge of certain information, (2)

that information is not readily available to the other party, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge. <u>Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank</u>, 57 F.3d 146, 155 (2d Cir. 1995).

Here plaintiff has not alleged, let alone shown, any facts indicating that the Special Facts Doctrine is applicable to this case. Plaintiff has merely asserted that Defendant had superior knowledge and that Defendant knew Plaintiff was acting upon mistaken knowledge. (Pl. Brief in Opp. at 9-10). Plaintiff has not pointed to anything that would substantiate a claim of special facts as regards the requirement to arbitrate his claims as provided by the Form U-4. Furthermore, Plaintiff, a person with experience in the securities industry, has not stated that he lacked information about the arbitration clause or that such information was not available to him by reasonable inquiry.[3] Because Plaintiff has not shown or even alleged the requisite elements, Plaintiff cannot avoid the arbitration agreement of the Form U-4 through the Special Facts Doctrine.

b. Contract of Adhesion and Unconscionability

Plaintiff's second defense is that his Form U-4 is unenforceable because it is an unconscionable contract of adhesion. (Pl. Brief in Opp. at 14). This contention is without merit and is contrary to settled law.

"A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." <u>Desiderio v. NASD</u>, 191 F.3d 198, 207 (2d Cir. 1999) (quoting 8 Samuel Williston, A Treatise on the Law of Contracts, § 18:9, at 54 (Richard A. Lord ed., 4th ed. 1998)). Because "Form U-4 binds both parties to

---

[3] All of NASD rules and procedures regarding arbitration under the Form U-4 are available online at www.nasd.com

mandatory arbitration and may not be said to favor the stronger party unreasonably,"
courts have repeatedly held that it is not a contract of adhesion. Id; see also Gilmer v.
Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining
power, however, is not a sufficient reason to hold that arbitration agreements are never
enforceable in the employment context.") It is settled law in this circuit that Form U-4
arbitration clauses are not contacts of adhesion and are not unconscionable. Desiderio,
191 F.3d at 207; see also Martens v. Smith Barney, Inc., 96 Civ. 3779, 2002 U.S. Dist.
LEXIS 8037 (S.D.N.Y. May 3, 2002) ("Every case in this district since Desiderio has
likewise upheld the enforceabilility of Form U-4's arbitration clause.")

c. Fraud or Misrepresentation

Plaintiff's final defense is that the arbitration agreement is not enforceable or
valid because Defendant defrauded him or made misrepresentations to him regarding
how the Form U-4 would affect him. (Pl. Brief in Opp. at 9). However, Plaintiff has not
pled or pointed to any evidence to support his conclusory allegation of fraud and
misrepresentation pertaining to the Form U-4. Plaintiff states in his affidavit that, in his
negotiations regarding the terms of his employment, he "told Mr. Kochav that [he] had no
intention to agree to arbitrate any claims that I might have against Putnam Lovell under
NASD procedures . . . ." Plaintiff claims that "Mr. Kochav arranged a conference call
with Ms. Schwartz ["outside" counsel to Putnam Lovell], in which [he] specifically
raised with Ms. Schwartz [his] refusal to arbitrate disputes with Putnam Lovell, and Ms.
Schwartz assured [him] that [the] Employment Agreement would supersede the
Employment Application or other documents evidencing any such agreement and that
[he] would be free to sue Putnam Lovell in court, if necessary." (Imperatore Aff. ¶ 4).

According to Plaintiff, Ms. Wolfe ("inside" counsel to Putnam Lovell) gave him the Form U-4 to sign before the Employment Agreement, but that "for reasons unrelated to the arbitration provision of the U4 [sic], Ms. Wolfe was unable to provide" Plaintiff with the complete U-4, and he signed the Employment Agreement first, before signing the U-4. It was on the basis of these "representations" by Putnam Lovell representatives that Plaintiff asserts he signed the Form U-4 on March 8, 2004, despite his intention not to arbitrate. (Id. ¶ 7).

Though Plaintiff claims to have been misled by Defendant, he does not make any specific allegations of fraud that could invalidate the Form U-4, which he signed over a week later. Ms. Schwartz did not mislead him when she stated that the Employment Agreement superseded the Employment Application, and Ms. Wolfe is not alleged to have made any representations to him. In sum, Ms. Schwartz's statements did not remove Plaintiff's duty to read for himself any later forms that he signed, such as the Form U-4, in which the arbitration clause is clear and specific.

Deutsche Aktiengesellschaft, supra, likewise involved a terminated employee who had signed a Form U-4 and later wished to file suit in the district court rather than arbitrate. The Second Circuit held that "even if [he] did not understand the form or had questions about the arbitration clause or the rules, as he alleges, the burden was upon him to have his concerns addressed before signing Form U-4. . . . [I]t was ultimately [his] responsibility to ensure he understood the document that he signed." Deutsche Aktiengesellschaft, 365 F.3d at 149. Like the Plaintiff in Deutsche Aktiengesellschaft, Plaintiff Imperatore is "a fully competent adult" and he "does not claim he could not read the print on the form, or otherwise understand it." Id. at 150 (citations omitted). So too

was it Plaintiff Imperatore's responsibility to read and make sure he understood the contracts he signed.

2. Scope of the Agreement

As discussed in section 1, <u>supra</u>, by signing the Form U-4 Plaintiff agreed to arbitrate any claim arbitrable under the NASD code of Arbitration Procedure. Rule 10101 of the NASD Code of Arbitration Procedure, titled "Matters Eligible for Submission," states in relevant part:

> This Code of Arbitration Procedure is prescribed . . . for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member . . . .

NASD Code of Arbitration Procedure Rule 10201, parts (a) and (b), further states that:

> (a) Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, <u>shall be arbitrated</u> under this Code, at the instance of:
> > (1) a member against another member;
> > (2) a member against a person associated with a member or a person associated with a member against a member; and
> > (3) a person associated with a member against a person associated with a member.
> (b) A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.

NASD Code of Arbitration Procedure Rule 10201(a) and (b)(emphasis added).

All of Plaintiff's claims relate to his employment and termination. Plaintiff does not dispute this in his affidavit or in his Brief in Opposition to Defendant's Motion to Compel Arbitration. Thus, all of Plaintiff's claims fall within NASD Rule 10101, and because Defendant has moved for arbitration, all of Plaintiff's claims fall under the Form U-4 Agreement to Arbitrate.

## CONCLUSION

Plaintiff entered into an agreement to arbitrate all claims arising from his employment with Defendant by signing the Form U-4. The scope of this agreement encompasses all of Plaintiff's claims before this court, and there is therefore no reason to stay the proceedings pending arbitration. Defendant's Motion to Compel Arbitration is therefore granted and Plaintiff's claims are dismissed without prejudice.


IT IS SO ORDERED.

Dated: New York, New York
March 15, 2006

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

*Counsel for the Plaintiffs*

Edward Imperatore
Harwood Lloyd, LLC
350 Fifth Ave., Suite 3304
Empire State Bldg.
New York, NY 10118

11

Tel: 212.268.5136
Fax: 212.564.1135

*Counsel for the Defendants*
Albert Solecki, Jr.
Goodwin Procter, LLP
599 Lexington Ave.
New York, NY 10022
Tel: 212.813.8800
Fax: 212.355.3333